UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BMW MEDICAL, INC. | CIVIL ACTION NO. 14-3338 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| XON HOLDINGS, LLC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Rule 12(b)(6) Motion to Dismiss (Record Documents 12), filed by Defendant, Paul Wesley Warrington ("Warrington") and Alpha Genomix Laboratories, Inc. ("Alpha"). See Record Document 12. A Memorandum in Opposition was filed by Plaintiff, BMW Medical, Inc. ("BMI"). See Record Document 24. A Reply to the Opposition to the Motion to Dismiss was filed by Defendants' Warrington and Alpha. See Record Document 27. For the reasons which follow, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff BMW Medical's LUTPA claim is **DISMISSED**.

**BACKGROUND**

BMI is a corporation organized under Louisiana law with its principal place of business in Shreveport, LA. See Record Document 1 at ¶ 7. XON Holdings, LLC ("XON") is designated as a limited liability corporation, which is now dissolved, and was organized under Tennessee law with a principal place of business in Memphis, TN[1]. Id. at ¶ 8. Kevin Jones is domiciled and a resident of Tennessee. Id. at ¶ 9. Alpha is a corporation organized under Georgia law with its principal place of business in Lawrenceville, GA. Id. at ¶ 10. Warrington is domiciled and a resident of Georgia. Id. at ¶ 11.

---

[1]Xon Holdings is designated as a corporation in the Complaint, however it is clear from the name of the entity that they are in fact a limited liability corporation. See Record Document 1 at ¶8.

BMI entered into an Independent Contractor Agreement with XON and XON's sole member, Kevin Jones, in November 2013. See Record Document 1 at ¶ 1. The agreement granted BMI the non-exclusive right to distribute and sell clinical diagnostic testing services, primarily involving genetic DNA testing, throughout the U.S. for a term of five (5) years. Id. Jones, acting on behalf of XON, requested that BMI sell a specific genetic testing service provided by Alpha, and expressly represented that the test was the subject of a clinical study at Johns Hopkins University. Id. This representation was also made by Warrington, the CEO of Alpha. BMI has stated that the alleged Johns Hopkins study was a main factor that doctors used in choosing the Alpha testing service. Id. BMI eventually contacted Johns Hopkins and learned that the study did not exist. Id.

Alpha has stated that they never entered into any written, oral or implied agreement with BMI for BMI to distribute or sell Alpha's testing services. See Record Document 12-1. In their Motion to Dismiss, Alpha argues that there is no personal jurisdiction over Alpha and Warrington, and BMI has failed to state a claim upon which relief may be granted. Id.

**LAW AND ANALYSIS**

**I.      Rule 12(b)(6) Standard.**

Defendants' Motion to Dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above

the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-556, 127 S.Ct. 1955, 1964-1965 (2007). The task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir.2010), citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949.

## II. Personal Jurisdiction

In cases such as this, where the relevant federal statute does not allow nationwide service of process, a court has personal jurisdiction over a nonresident defendant if (1) the forum state's Long-Arm Statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of personal jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. See Latshaw v. Johnson, 167 F.3d 208, 211 (5th Cir. 1999). Here, the first prong of this test is subsumed into the second, because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, *see* La. Rev. Stat. Ann. § 13:3201(B). Thus, the only question is whether exercising jurisdiction over Alpha and Warrington satisfies federal due process requirements.

The United States Court of Appeals for the Fifth Circuit has summarized this inquiry as (1) whether the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; (2) whether the plaintiff's cause of action arises out of or relates to the defendant's forum related activities; and (3) whether the exercise of jurisdiction over the defendant is fair and reasonable. Nuovo Pignone, SPA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

Depending on the extent to which a defendant purposefully avails himself of a forum state's benefits, two kinds of personal jurisdiction, specific or general, may exist under the minimum contacts analysis. See Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction exists when the plaintiff's cause of action arises from or is related to the defendants' minimum contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Wilson, 20 F.3d at 647. General jurisdiction, however, will attach even if the act or transaction sued upon is unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. Helicopteros, 466 U.S. at 414 n.9; Wilson, 20 F.3d at 647. "Systematic and continuous" activities requires a defendant to have "extensive" contacts with the forum state, and this test is often a more difficult one to meet. Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001).

A defendant establishes minimum contacts with a forum state if "the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)). Often times a defendant's physical presence or operation of a business in the forum state will suffice; however, even when such contacts are lacking, "a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from that contact." Nuovo Pignone, *SPA*, 310 F.3d at 379.

BMI carries the burden of proving that this Court has personal jurisdiction over Alpha and Warrington. Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. See

Wyatt v. Kaplan, 686 F. 2d 276, 280 (5th Cir. 1982).  The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence, a *prima facie* showing suffices. Id.

With regard to personal jurisdiction over Alpha, BMI argues that the extensive communications between employees of Alpha and employees of BMI establishes the minimum contacts necessary for the exercise of personal jurisdiction.  For there to be specific jurisdiction, the plaintiff's cause of action must arise from or be related to the defendant's minimum contacts, which requires that the defendant should reasonably anticipate being haled into court there.  See Wilson.

BMI includes a printout from Alpha's website which states "Alpha Genomix is licensed to operate in the following States...Louisiana."  See Record Document 24-3, Ex. 5.  It is the argument of BMI that Alpha is holding themselves out as being licensed in Louisiana, which Alpha disputes.  Alpha argues that the statement means that they are "certified by federal accreditation organizations to test Louisiana specimens, but the State of Louisiana has never licensed Alpha to do business in Louisiana."  See Record Document 27.  Given Alpha's reply to plaintiff's exhibit Alpha may have made a false claim upon which plaintiff relied.

Alpha has made the argument that there was only "sporadic testing of samples sent from Louisiana."  See Record Document 12-1.  BMI counters this argument with the use of tracking reports prepared by Alpha that were sent to BMI.  See Record Document 24. The reports show that between January 2014 and May 2014, there were 530 testing kits shipped to Louisiana from Alpha.  At least 150 of those testing kits were returned to Alpha from Louisiana with patient samples for testing.  Alpha tested at least 78 patient samples

from Louisiana and provided test results for those samples to medical providers in Louisiana. Id. This appears to be far more than "sporadic testing" of samples by Alpha. These testing kits did not accidentally find their way into the forum state. The samples were intentionally sent for analysis in Georgia, and the analysis were intentionally sent back to medical providers in the forum state.

There is also email correspondence between Pattie Gilbert, an employee of BMI, and Shelbie Davis, an employee of Alpha. See Record Document 24-2. The email correspondence refers to testing kits that were reordered, tracking numbers for shipment of testing kits, and approval for orders. Id. Alpha was not merely mailing kits to clinics in Louisiana in hopes of doing business. Clearly, Alpha was communicating with employees of BMI about the orders for testing kits placed by clinics in Louisiana.

BMI relies on a number of sworn affidavits and email correspondence between employees of BMI and Alpha in support of their position. The declaration of Lawrence West, Jr. ("West"), a medical director for BMI based in Louisiana, states that Jones acting on behalf of XON Holdings, requested that BMI sell a specific genetic testing service provided by Alpha, and expressly represented that the test was the subject of a clinical study at Johns Hopkins University. See Record Document 24-1 at ¶ 3. West also states that Warrington, the Chief Executive Officer of Alpha, repeatedly made the same representation. Id. West goes on to state that Warrington sent an email to Cory Mahal ("Mahal"), an employee of BMI that discussed the study at Johns Hopkins and details surrounding the study. Id. at ¶ 6. A telephone conference call was held on March 19, 2014 between individuals from BMI and Alpha. Id. at ¶ 7. West references the subject of this telephone call and references an email that was sent afterwards by West to Warrington

summarizing the phone call. Id. A topic that was discussed during the conference call was the need for marketing materials to market the Johns Hopkins study. Id.

Also attached are a number of email exchanges between employees of BMI and Alpha. Included is an email chain or thread between Mahal and Warrington. In one email Warrington states:

> Kevin and I are working on the study as we speak and we are discovering the criteria may more [sic] strict than originally expected. Mostly because we are now doing a legitimate study, IRB approved and run through John Hopkins. The office will need to utilize EMR so the study coordinators can extract data at inception and every 90 days. In addition, the administrative aspect will increase and cannot be completed by the rep.
> In fact the rep can't be involved with the study at all. With that being said, clinics that aren't willing or able to provide the necessary administrative work and training will not be allowed to participate.
> Kevin and I are working on minimizing the paperwork with the study coordinator and will have more information soon but I wanted to set expectation as early as possible so we don't make any promises we cant fulfill.

See Record Document 24-1.

Also included is a declaration by Pattie Gilbert, a financial administrator of BMI. See Record Document 24-2. Gilbert has lived and worked in Shreveport, LA since she began working for BMI in December 2013. Id. at ¶ 2. Gilbert states that "Between January 2015 and May 2015, I had direct and extensive contact with Shelbi Davis, an employee of Alpha Genomix, regarding Alpha Genomix's genetic testing services, including regular telephone calls and more than one hundred emails." Id. at ¶ 3. The declaration of Gilbert also contains the statement:

> Between April 4, 2014 and April 8, 2014, Davis and I exchanged the emails attached to this declaration as Exhibit 2, which concern the Alpha Genomix accounts of the Neurology and Headache Center in Shreveport, Louisiana, McGovern Medical in Ruston, Louisiana, and Willis Knighton in Oil City, Louisiana, and include a request for the shipment of one hundred Alpha

Genomix genetic testing kits to those medical providers in Louisiana.

Id. at ¶ 6.

The Fifth Circuit has established that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." See Wien v. Brandt, 195 F. 3d 208, 213. BMI argues that the correspondence between Alpha and BMI gave rise to the intentional tort of fraud, and therefore this constitutes purposeful availment, satisfying the requirements for the exercise of personal jurisdiction. Alpha disputes the amount of communication alleged between BMI and themselves, and makes the argument that because Alpha did not initiate the correspondence, there is no personal jurisdiction. Wien made clear however that when there is a dispute about the number and content of communications, any conflict between the plaintiff and defendant must be construed in favor of the plaintiff. Wien at 212-213. Alpha's argument fails.

It is clear from the exhibits provided by BMI that there was extensive email correspondence between BMI and Alpha. There were also emails between representatives of BMI and Warrington. The question becomes whether such correspondence alone was sufficient to rise to the level of fraud alleged by BMI. There is no doubt that the Johns Hopkins study was discussed in numerous emails between BMI and Warrington. The nature of the email correspondence makes it difficult to ascertain the origin of the email "chain". An email sent from Warrington to BMI contains several references to "the study" and how it must be "run through John Hopkins". See Record Document 24-1. Coupled with the telephone calls and conferences, these emails clearly perpetuate the alleged fraud that Alpha had a study that was being conducted by Johns Hopkins.

### III. Fraud

The elements of a Louisiana delictual fraud or the intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury. Guidry v. U.S. Tobacco Co., 188 F.3d 619, 627 (5th Cir. 1999). The facts of the complaint, taken as true, must state a claim for these three elements in order to overcome the Motion to Dismiss. Warrington and Alpha argue that FRCP Rule 9(b) requires a heightened showing for a pleading alleging fraud. The language of FRCP Rule 9(b) requires "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Warrington and Alpha argue that Plaintiff has failed to meet this heightened standard in their complaint, stating that "BMI relies on mere legal conclusions to cloud what is clearly a non-fraudulent statement." Record Document 12.

Plaintiff relies on the Fifth Circuit ruling that "...the essence of Rule 9(b) is a requirement that the 'who, what, when, where and how' of the alleged fraud be laid out." DeSoto Hospital Association v. Cardinal Health, 2008 WL 4073033 (W.D.L.A. July 29, 2008). They argue that the complaint satisfies the heightened standard of FRCP Rule 9(b) by establishing the requisite "who, what, when, where and how."

The alleged fraud is Alpha and Warrington's representation that Alpha would be participating in a study "explicitly associated with the renowned John[s] Hopkins Medical Institutional Review Board." See Record Document 1 at § 17. The complaint alleges that Alpha issued press releases, and corresponded by e-mail with representatives of BMI, specifically related to the alleged Johns Hopkins study which never existed. Id. at § 17, 24.

The complaint provides specific instances of Alpha and Warrington perpetuating the claim that they were involved in the study with Johns Hopkins, which are sufficient to satisfy the heightened Rule 9(b) requirement.

Defendants argue that Plaintiff fails to state a claim for Warrington and Alpha having the specific intent to deceive, as required under the elements for fraud. They state that "nothing in paragraph 19 of the complaint reveals any false representation, let alone that it was a material fact, with knowledge of its falsity, and that it was intended to deceive." Record Document 12. Paragraph 19 of the complaint includes a quote from an email sent from Warrington to an employee of BMI which states, "[M]ostly because we are now doing a legitimate study, IRB approved and run through John[s] Hopkins." Record Document 1, § 19. The fraud alleged by BMI is that Warrington and Alpha represented that they were conducting a study with Johns Hopkins, which BMI relied up on in their business dealings. It is clear that there is in fact a "false representation" in Paragraph 19, specifically the Johns Hopkins study, which never existed.

Defendants go on to state that "[C]ritically, Alpha's CEO warned BMI not to rely on the study being approved." Record Document 12. The quote referencing expectations is "Kevin and I are working on minimizing the paperwork with the study coordinator and will have more information soon but I wanted to set expectation[s] as early as possible so we don't make any promises we can't fulfill." Record Document 1, § 19. Considering the email explicitly states that Alpha is "doing a legitimate study" with Johns Hopkins, it is difficult to understand the Defendant's position that Warrington is warning BMI not to rely on the study being approved. Despite the representation by Alpha, there never was any "legitimate study."

**IV. Negligent Misrepresentation**

The cause of action of negligent misrepresentation has been recognized by Louisiana jurisprudence based on the common law tort of negligent misrepresentation and is encompassed within the broad language of La. Civil Code Articles 2315 & 2316. Dousson v. South Central Bell, 429 So. 2d 466 (La. App. 4 Cir. 04/04/83). Louisiana courts have adopted the language of Restatement (2nd) Torts, Section 522 to establish the elements of negligent misrepresentation

> One who, in the course of his business, profession or employment or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Id. citing Restatement (2nd) Torts, Section 522.

In addition to the elements established through the adoption of Section 522, there are three circumstances that must concur: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of duty; and (3) the breach must have caused damages to the plaintiff. Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So. 2d 1157 (La. App. 3 Cir. 05/11/88).

Defendants argue that they had no duty to the plaintiffs and therefore the plaintiffs have failed to state a claim for negligent misrepresentation. BMI relies on case law where the party had no duty to supply information to the plaintiff in that matter, who was not a customer and to whom it owed no fiduciary duty. The court found that "once the party volunteered information, it assumed a duty to insure that the information volunteered was correct." Pastor v. Lafayette Bldg. Assn., 567 So. 2d 793 (La. App. 3 Cir. 10/03/90). BMI

had no contractual relationship with Alpha and Warrington, therefore it must be determined whether there was a duty to provide BMI with correct information.

BMI argues that their "complaint alleges that the defendants repeatedly and falsely represented that Alpha Genomix's genetic testing service was the subject of a clinical study at Johns Hopkins University and quotes a specific email in which Warrington made this false representation." Record Document 24.

BMI and its agents told physicians and other persons that the Alpha test was the subject of a Johns Hopkins "study" and the existence of this study was an important factor in the decision of many physicians to order the Alpha test. See Record Document 1 at § 3. The Louisiana Supreme Court has established that "[T]he case by case application of the duty/risk analysis, presently employed by our courts, adequately protects the misinformer and the misinformed because the initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm." Barrie v. V.P. Exterminators, Inc., 625 So. 2d 1007 (La. 10/18/93).

In this instance, although there was no contract between BMI and Alpha, BMI was using the information provided to it firsthand by Alpha, that the test was a part of a Johns Hopkins University study. There were direct conversations between representatives of Alpha and BMI about the Johns Hopkins study. Using a case by case analysis this is sufficient to meet the requirement for a duty on the part of Alpha.

The next question is whether there was a breach of that duty. It is clear from the facts of the complaint that Alpha told BMI that the Johns Hopkins study existed when in fact it did not exist. This is sufficient to establish the duty to be truthful was breached by Alpha. The last requirement is that the breach caused damage to the plaintiff. BMI alleges in the

complaint that they suffered damages as a result of their "justifiable reliance upon their misrepresentations." Record Document 1 at § 56.

Taking the facts of the complaint as true, the plaintiff has satisfied the requirements of stating a cause of action for negligent misrepresentation.

**V. Louisiana Unfair Trade Practice Act Claim**

Defendants argue that BMI has failed to state a claim under the Louisiana Unfair Trade Practice Act, because Alpha is not a competitor to BMI so it is not in the class of persons with standing under LUTPA. Record Document 12-1. Both Defendants and Plaintiff cite Louisiana state law in support of their respective positions. The Fifth Circuit has upheld the standard that to having standing under LUTPA plaintiffs must demonstrate that they are consumers or business competitors. See Delta Truck & Tractor, Inc. v. J.I. Case Co., 975 F. 2d 1192 (5th Cir. 1992). Federal Courts in Louisiana have chosen not to follow Louisiana state law when it comes to who has standing to bring a claim under LUTPA. LA R.S. 51: 1402(1) defines a consumer as "any person who uses, purchases, or leases goods or services." A consumer transaction is defined as "any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family or household use." La R.S. 51:1402(2). It is clear from the facts of the complaint that BMI and Alpha are not competitors, as BMI was using the Alpha testing kit. A person is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." La. R.S. 51:1402(8) The problem arises with the definition of a consumer transaction, which is "any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use." La. R.S.

51:1402(3). The business transactions taking place between BMI and Alpha are between juridical persons (a corporation and limited liability corporation) and not natural persons and were not primarily intended for personal, family or household use, therefore, BMI cannot be deemed to be a consumer under the language of LUTPA. See La. Civil Code Art. 24. Therefore BMI lacks standing to bring the LUTPA claim.

## CONCLUSION

Based on the foregoing analysis, the Court finds that BMI has set forth adequate factual allegations that raise a right to relief as to their personal jurisdiction, fraud, and negligent misrepresentation claims. BMI has failed to set forth factual allegations that raise a right to relief as to their LUTPA claim. Thus, Defendants' Motion to Dismiss (Record Document 12) is **GRANTED IN PART and DENIED IN PART.**

**IT IS HEREBY ORDERED** that BMI's LUTPA claim is hereby **DISMISSED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of March, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE